WALLACE M. ADSIT and PERCY E. ADSIT, as Administrators, etc., of LEWIS G. ADSIT, Deceased, Respondents, *v.* CATSKILL ELECTRIC RAILWAY COMPANY, Appellant.

*Negligence — injury to a horse driven upon a bridge, on which an electric car is approaching from the other end.*

In an action brought against a street railway company to recover damages for the killing of the plaintiffs' intestate's horse, it appeared that the defendant's railroad extended across a bridge which was so narrow that when a car was on the track only about eight and a half feet of space was left between the car and the side of the bridge.

The plaintiffs gave evidence tending to show that their intestate drove upon the bridge as one of the defendant's trolley cars came upon the bridge from the opposite direction; that his horse was walking, and that the trolley car was going from four to twelve miles an hour; that the horse commenced to prance and showed evidence of fright when the car was about three hundred feet distant; that the plaintiffs' intestate raised his hand as a signal to the motorman to slow down the car, but that the speed of the car was not slackened; that when the car was at a distance of from twenty to forty feet the horse swerved across the tracks; that some effort was then made by the motorman to stop the car, but that it struck the horse and injured him so that he had to be killed.

The car did not stop until it had passed five or more feet beyond the horse. One of the plaintiffs' witnesses testified that at the place where the accident happened a car traveling at the rate of eight miles an hour could be stopped within fourteen feet.

*Held,* that a judgment entered upon a verdict in favor of the plaintiffs should be affirmed.

APPEAL by the defendant, the Catskill Electric Railway Company, from a judgment of the County Court of Greene county in favor of the plaintiffs, entered in the office of the clerk of the county of Greene on the 15th day of December, 1902, upon the verdict of a jury for $150, and also from an order bearing date the 9th day of December, 1902, and entered in said clerk's office, denying the defendant's motion for a new trial made upon the minutes.

*Arthur M. Murphy*, for the appellant.

*Pierre S. Jennings*, for the respondents.

CHASE, J.:

This action was brought by the plaintiffs' intestate in his lifetime to recover damages for injuries to a horse owned by him.

Defendant is a street surface railroad corporation engaged in the transportation of passengers by trolley cars.

Ou the 6th day of February, 1902, the intestate drove a horse attached to a sleigh upon the northerly end of a highway bridge which consists of three spans aggregating 437 feet in length, just before or about the time that one of defendant's cars came upon the southerly end of said bridge. The bridge is a narrow one The tracks of the defendant's railroad are on the easterly side of said bridge, leaving, when a car is on the tracks, only about eight and one-half feet between the car and the westerly side of said bridge. The intestate's horse was walking, and the trolley car was going from four to twelve miles an hour. The horse commenced to prance and showed evidences of fright, when the distance between the intestate and the car was about three hundred feet, and the intestate testified that he then raised his hand as a signal to the motorman to "slow down" his car, and that at the time he did so the motorman was looking at him. Defendant's motorman testified that if the intestate had raised his hand he would have seen it, but denied that he raised his hand. A little later the horse swerved around across the defendant's tracks, and at such time the defendant's car was from twenty to forty feet away from the horse. The speed of the car had not been slackened prior to that time. The evidence relating to the motorman and as to whether he was attentive to his duties from the time the signal is claimed to have been given until a time subsequent to the horse swerving across the tracks is contradictory. The intestate shouted to the motorman when the horse was across the tracks and some effort was then made by the motorman to slow and stop the car, but the car struck the horse, shoving him from the tracks, and so injured him that he had to be killed. The car did not stop until it had passed five or more feet beyond the horse. One of the plaintiff's witnesses testified that the place where the accident occurred is an easy place to stop a car, and that he could stop a car going at the rate of eight miles an hour in fourteen feet, and such testimony is not directly contradicted.

The defendant takes so large a part of the width of the bridge for its tracks and cars and leaves so narrow a roadway for persons rightfully using the bridge with horses and vehicles that it is its duty in running cars thereon to have them under control. In this case the

motorman knew that the intestate was approaching him on the bridge with a horse and sleigh, and the exercise of reasonable care on his part under the admitted circumstances required that he should be watchful and observant, and that he should so regulate the speed of his car and so have at his command the appliances for stopping the car that no unnecessary delay would occur in case of sudden emergency. Omission to use the degree of care which the circumstances require is negligence. The evidence clearly presents a question of fact as to whether the motorman used that degree of care which the circumstances required, and also as to whether the car was stopped as quickly as it should have been stopped with the exercise of such care when the danger of a collision had become apparent. We cannot say that the verdict of the jury in favor of the plaintiff was so against the weight of evidence that a new trial should be granted.

More serious questions arise in regard to the charge of the court. The court seems to have been in some confusion in regard to the degree of care required of the defendant, and the counsel for the plaintiffs unwisely insisted upon and obtained an assent to certain propositions which, if considered apart from other statements made by the court to the jury, may have been erroneous.

The measure of care to be exercised towards persons rightfully in a street or highway by corporations running trolley cars thereon is such reasonable care as an ordinarily prudent person would exercise under all the circumstances. The last expressions of the court to the jury were not harmful to the defendant and we quote therefrom : " ( Defendant's counsel) : If the motorman using ordinary prudence erred in a matter of judgment as to getting the car stopped in time or as to the method of stopping it, it was not negligence for which the plaintiff can recover. The Court : I have already charged that. * * * (Defendant's counsel) : The motorman on the car was not required to take any precaution against frightening the plaintiff's horse more than would be required by the driver of any other vehicle. The Court : I will charge that. * * * (Defendant's counsel) : He was not required to exercise any greater care towards the plaintiff in stopping and controlling his car than would the driver of a load of hay, if the load of hay frightened the horse. The Court : I will say the motorman should observe the same care

that the driver of any other vehicle should observe as far as the traveling public is concerned. * * * (Defendant's counsel): I also ask your honor to charge that there is no evidence in this case that the motorman saw Mr. Adsit raise his hand when he first came on the bridge. The Court: I will leave that for the jury to say. (Defendant's counsel): Defendant excepts to that portion of your honor's charge in which you say to the jury that the defendant should have used such care as was necessary to run their cars without endangering the rights of the other public; and also to that portion of your honor's charge in which you say to the jury that it is the duty of the person in charge of the car to operate it in such a manner as to avoid an accident. The Court: I didn't charge it in that language, that restricted way; I stated they were to run it in such a manner as a prudent person would run for the purpose of avoiding an accident, but not that they were obliged to run it so as to avoid an accident."

In view of the statements of the court made to the jury immediately before they retired for their deliberations, they could not have been confused by any previous expressions relating to necessary or utmost care.

This case has been twice tried, and the jury in each case has found in favor of the plaintiffs, and we think the judgment should be affirmed.

Judgment unanimously affirmed, with costs; HOUGHTON, J., not sitting.